**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2017

Lyle W. Cayce
Clerk

————

No. 16-50157

————

AMERICAN ACADEMY OF IMPLANT DENTISTRY; AMERICAN SOCIETY
OF DENTIST ANESTHESIOLOGISTS; AMERICAN ACADEMY OF ORAL
MEDICINE; AMERICAN ACADEMY OF OROFACIAL PAIN; JAY E.
ELLIOTT, D. D. S.; MONTY BUCK, D. D. S.; JAROM C. HEATON, D. D. S.;
MICHAEL A. HUBER, D. D. S.; EDWARD F. WRIGHT, D. D. S., M. S.,

        Plaintiffs - Appellees

v.

KELLY PARKER, in her official capacity as Executive Director of the Texas
State Board of Dental Examiners, TAMELA L. GOUGH, D. D. S., M. S., in
her official capacity as a Member of the Texas Board of Dental Examiners;
STEVE AUSTIN, D. D. S., in his official capacity as a Member of the Texas
Board of Dental Examiners; TIM O'HARE, in his official capacity as a
Member of the Texas Board of Dental Examiners; KIRBY BUNEL, JR., D. D.
S., in his official capacity as a Member of the Texas Board of Dental
Examiners; WILLIAM R. BIRDWELL, D. D. S., in his official capacity as a
Member of the Texas Board of Dental Examiners; EMILY A. CHRISTY, in
her official capacity as a Member of the Texas Board of Dental Examiners;
JAMES W. CHANCELLOR, D. D. S., in his official capacity as a Member of
the Texas Board of Dental Examiners; RODOLFO G. RAMOS, JR., D. D. S.,
in his official capacity as a Member of the Texas Board of Dental Examiners;
LEWIS WHITE, in his official capacity as a Member of the Texas Board of
Dental Examiners; WHITNEY HYDE, in her official capacity as a Member of
the Texas Board of Dental Examiners; RENEE CORNETT, R. D. H., in her
official capacity as a Member of the Texas Board of Dental Examiners; D.
BRADLEY DEAN, D. D. S., in his official capacity as a Member of the Texas
Board of Dental Examiners; CHRISTIE LEEDY, D. D. S., in her official
capacity as a Member of the Texas Board of Dental Examiners; LOIS
PALERMO, R. D. H., in his official capacity as a Member of the Texas Board
of Dental Examiners; EVANGELIA MOTE, in her official capacity as a
Member of the Texas Board of Dental Examiners,

        Defendants - Appellants

No. 16-50157

Appeals from the United States District Court
for the Western District of Texas

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The plaintiffs challenge a provision in the Texas Administrative Code regulating advertising in the field of dentistry. The district court held that the provision violated the plaintiffs' First Amendment right to engage in commercial speech. It therefore enjoined enforcement of the provision as applied to the plaintiffs. The defendants appealed. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Texas law prohibits dentists from advertising as specialists in areas that the American Dental Association ("ADA") does not recognized as specialties. *See* TEX. ADMIN. CODE § 108.54. The plaintiffs seek to enjoin enforcement of Section 108.54, as they wish to advertise in areas recognized as specialties by other dental organizations but not by the ADA. They argue the First and Fourteenth Amendments give them the right to do so.

This appeal involves several plaintiffs. The organizational plaintiffs include the American Academy of Implant Dentistry, the American Society of Dental Anesthesiologists, the American Academy of Oral Medicine, and the American Academy of Orofacial Pain. These organizations are national organizations with member dentists. The purpose of each organization is to advance the interests of dentists practicing in the organization's respective practice area. Each organization sponsors a credentialing board and offers credentials to members who demonstrate expertise in their respective field.

No. 16-50157

The individual plaintiffs are five dentists, three of whom are in private practice and two of whom are professors at the University of Texas Health Science Center School of Dentistry. The individual plaintiffs limit their practice to one of the following practice areas: implant dentistry, dental anesthesiology, oral medicine, and orofacial pain. Each of the individual plaintiffs has been certified as a "diplomate" by one of the organizational plaintiffs' credentialing boards, indicating that the plaintiff has achieved that board's highest honor by meeting certain requirements set by the board "including training and experience beyond dental school."

The Texas Occupations Code provides that the Texas State Board of Dental Examiners may "adopt and enforce reasonable restrictions to regulate advertising relating to the practice of dentistry . . . ." *See* TEX. OCC. CODE § 254.002(b). The plaintiffs take issue with one of the Board's regulations, Texas Administrative Code Section 108.54. Section 108.54 provides:

> A dentist may advertise as a specialist or use the terms "specialty" or "specialist" to describe professional services in recognized specialty areas that are: (1) recognized by a board that certifies specialists in the area of specialty; and (2) accredited by the Commission on Dental Accreditation of the American Dental Association.

TEX. ADMIN. CODE § 108.54(a). Part (b) lists the ADA's nine recognized specialty areas as the ones that meet the requirements of part (a).[1] The Board does not itself certify specialties but instead relies exclusively on the ADA for that purpose. Section 108.54 also requires certain ADA-related education or board-certification qualifications in order to advertise as a specialist. *See* TEX. ADMIN. CODE § 108.54(c).

---

[1] Those recognized specialty areas are endodontics, oral and maxillofacial surgery, orthodontics and dentofacial orthopedics, pediatric dentistry, periodontics, prosthodontics, dental public health, oral and maxillofacial pathology, and oral and maxillofacial radiology. *See* TEX. ADMIN. CODE § 108.54(b).

No. 16-50157

Section 108.54 prohibits the individual plaintiffs from advertising as specialists or referring to their practice areas as specialties because their practice areas are not recognized as such by the ADA. The ADA has considered whether to grant specialty recognition to the plaintiffs' respective practice areas, but thus far it has denied that recognition. Nevertheless, the plaintiffs are not completely forbidden from advertising their practice areas. In 2012, two of the individual plaintiffs in this case and the American Academy of Implant Dentistry challenged a separate provision of the Texas Administrative Code that restricted the plaintiffs from advertising their credentials and holding themselves out as specialists in implant dentistry. The Board responded by revising an existing regulation and adding another. *See* TEX. ADMIN. CODE §§ 108.55, 108.56. Section 108.55 allows general dentists who do some work related to the specialty areas listed in Section 108.54(b) to advertise those services as long as they include a disclaimer that they are a general dentist and do not imply specialization. Section 108.56 provides that dentists may advertise "credentials earned in dentistry so long as they avoid any communications that express or imply specialization . . . ." *See also* TEX. ADMIN. CODE § 108.57 (prohibiting false, misleading, or deceptive advertising).

Under the current regulations, the plaintiffs may advertise credentials they have earned and the services they provide only if they clearly disclose that they are a "general dentist" and do not "imply specialization." *See* TEX. ADMIN. CODE §§ 108.55, 108.56. The plaintiffs complain that this regime prevents them from truthfully holding themselves out as "specialists" in their fields.

In March 2014, the plaintiffs brought this action against the executive director and members of the Board in their official capacities. The plaintiffs challenged Section 108.54 on First and Fourteenth Amendment grounds, and the parties eventually filed cross-motions for summary judgment. The district court granted summary judgment to the plaintiffs in part, concluding that

4

No. 16-50157

Section 108.54 "is an unconstitutional restriction on Plaintiffs' First Amendment right to free commercial speech." The court enjoined the defendants "from enforcing Texas Administrative Code § 108.54 to the extent it prohibits Plaintiffs from advertising as specialists or using the terms 'specialty' or 'specialist' to describe an area of dentistry not recognized as a specialty by the American Dental Association, or any other provision of Texas law inconsistent with [the district court's] opinion." The court determined the plaintiffs' "remaining Fourteenth Amendment claims are without merit" and granted summary judgment to the defendants on those claims. The defendants appealed.

## DISCUSSION

We review a judgment on cross-motions for summary judgment *de novo* "with evidence and inferences taken in the light most favorable to the nonmoving party." *White Buffalo Ventures, LLC v. Univ. of Texas at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

This case involves commercial speech, which is protected by the First Amendment. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 761–62 (1976). "Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561–62 (1980).

Though commercial speech is protected by the First Amendment, courts give to it "lesser protection . . . than to other constitutionally guaranteed expression." *Id.* at 563. A four-part test applies:

5

No. 16-50157

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566. "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983). Within this framework, we consider the plaintiffs' challenge to Section 108.54. We conclude that the Board fails to justify Section 108.54 under the *Central Hudson* analysis. We do not reach the plaintiffs' Fourteenth Amendment argument.

Before we begin our analysis, we measure the reach of the district court's ruling. The parties dispute whether the district court enjoined Section 108.54 facially or as applied. We find that answer in the district court's own words: Section 108.54 "is an unconstitutional restriction on Plaintiffs' First Amendment right to free commercial speech." We interpret that language to mean that Section 108.54 is held to be unconstitutional only as applied to these plaintiffs. Neither the district court nor we address whether this language would also fail a facial challenge.

*I.    Lawful Activity, Not Misleading*

In order for commercial speech to be protected under the First Amendment, "it at least must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566. "The first part of the test is really a threshold determination whether the speech is constitutionally protected . . . ." *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

6

No. 16-50157

The parties do not dispute that the relevant speech in this case concerns lawful activity. Texas law permits the individual plaintiffs to limit their practice to the fields of implant dentistry, dental anesthesiology, oral medicine, and orofacial pain. We agree, then, that advertising as a specialist in one of these practice areas concerns lawful activity.

The parties disagree as to whether the speech would be misleading or just potentially misleading. The distinction is important. "States may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive." *In re R.M.J.*, 455 U.S. 191, 203 (1982). "But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions." *Id.*

The Board argues that the relevant speech here is inherently misleading because the term "specialist," in the context of unregulated dental advertising, is devoid of intrinsic meaning. The Board urges us to categorize the term "specialist" in a completely unregulated context, reasoning "the State need only show that an unregulated, unadorned, and unexplained claim of 'specialist' status in a particular practice area is inherently misleading[.]" In support, the Board offers witness testimony from several dentists regarding what they perceive "specialist" to mean. Observing that the witnesses characterize "specialist" differently, the Board reasons the term "specialist" has no agreed-upon meaning, is devoid of intrinsic meaning, and is therefore inherently misleading.

It has been "suggested that commercial speech that is devoid of intrinsic meaning may be inherently misleading, especially if such speech historically has been used to deceive the public." *Peel v. Attorney Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 112 (1990) (Marshall, J. &

Brennan, J., concurring in the judgment). The Court noted, for example, that a trade name is "a form of commercial speech that has no intrinsic meaning." *Friedman v. Rogers*, 440 U.S. 1, 12 (1979). "A trade name conveys no information about the price and nature of the services offered . . . until it acquires meaning over a period of time . . . ." *Id.* The term "specialist," by contrast, is not devoid of intrinsic meaning. All of the testimony offered by the Board demonstrates that the term "specialist" conveys a degree of expertise or advanced ability. Although different consumers may understand the degree of expertise in different ways, that only shows the term has the potential to mislead. It does not mean the term is devoid of intrinsic meaning and, therefore, inherently misleading.

The Board nevertheless urges that the use of the term "specialist" is unprotected because, unlike in *Peel*, the "specialist" designation might be used without reference to any certifying organization. The Court in *Peel* considered a claim of "certification as a 'specialist' by an identified national organization[.]" *Peel*, 496 U.S. at 105. The problem here is the absence of any group imprimatur behind the label "specialist." Nonetheless, the term "specialist" is not rendered devoid of intrinsic meaning, and thereby inherently misleading, simply because the organization responsible for conferring specialist credentials on a particular dentist is not identified in the advertisement. *See Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 145 & n.9 (1994). Whether the absence of that information contributes to the potentially misleading character of the speech is a separate question.

Moreover, there is no evidence that the term "specialist" has been or will be used in a way that is distinct from its ordinary meaning. In one appeal, we held that the use of the term "invoice" in automobile advertising was inherently misleading because it was "calculated to confuse the consumer[.]"

8

*Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Comm'n*, 24 F.3d 754, 757 (5th Cir. 1994) (quotation marks omitted).  It was misleading because an advertised price of "$49.00 over invoice" could mean a multitude of prices other than the dealer's true cost because "holdbacks, incentives, and rebates" were included in the dealer's cost.  *Id.*  The word "invoice" did "not mean what it appear[ed] to mean" and conveyed no useful information to the consumer.  *Id.*

Here, the individual plaintiffs intend to use "specialist" in the same manner as dentists practicing in ADA-recognized specialties, namely, to convey useful, truthful information to the consumer.  Unlike in *Joe Conte*, the relevant term — "specialist" as opposed to "invoice" — will be used in a way that is consistent with its ordinary meaning.

Finally, the Board suggests that the plaintiffs' proposed speech is inherently misleading simply because it does not comply with the regulatory requirements imposed by the Board.  According to the Board, Section 108.54 "is what gives 'specialist' a standardized, reliable meaning in dental advertising in Texas."  The Board's argument would grant it the ability to limit the use of the term "specialist" simply by virtue of having created a regime that defines recognized and non-recognized specialties.  *See Byrum*, 566 F.3d at 447.  Even if appropriate regulation is warranted because the "specialist" designation might be potentially misleading, it is not inherently misleading merely because it does not align with the Board's preferred definition of that term.

Our fundamental issue is whether the speech is subject to First Amendment protection.  "Truthful advertising related to lawful activities is entitled to the protections of the First Amendment."  *In re R.M.J.*, 455 U.S. at 203.  The dentists' proposed speech "may be presented in a non-deceptive manner and [is] not 'inherently likely to deceive' the public."  *See Pub. Citizen, Inc. v. Louisiana Attorney Disciplinary Bd.*, 632 F.3d 212, 219 (5th Cir. 2011)

(quoting *In re R.M.J.*, 455 U.S. at 202). "Given the complete absence of any evidence of deception, the Board's concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment." *Ibanez*, 512 U.S. at 145 (quotation marks and citations omitted). By completely prohibiting dentists from advertising as specialists simply because their practice area is one not recognized as a specialty by the ADA, "truthful and nonmisleading expression will be snared along with fraudulent or deceptive commercial speech[.]" *See Edenfield v. Fane*, 507 U.S. 761, 768–69 (1993).

The plaintiffs' proposed speech is not inherently misleading. Even so, the Board may regulate potentially misleading speech if the regulation satisfies the remaining elements of the *Central Hudson* test. *See id.* at 769. In order to meet its burden, the Board must "show[] that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez,* 512 U.S. at 142 (citing *Central Hudson*, 447 U.S. at 566). We now look at those issues.

## II.    *Substantial Interests*

The parties agree that the Board has asserted substantial interests. The plaintiffs dispute two of the interests articulated by the Board: "preventing the public from being misled to believe that qualification as a 'specialist' under non-ADA-approved criteria is equivalent to qualification as a 'specialist' under ADA-approved criteria," and "exercising its 'power to establish standards for licensing practitioners,' *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)[.]" The plaintiffs argue that these are not substantial interests.

These interests appear to be related to the state's interest in "ensuring the accuracy of commercial information in the marketplace, establishing uniform standards for certification and protecting consumers from misleading

professional advertisements." The Board considers the plaintiffs' objections to be "inconsequential" because the plaintiffs concede "the State has a substantial interest in protecting the public from misleading advertising[.]" As the plaintiffs point out, however, the Board may not assert a substantial interest in Section 108.54 itself simply because "States have a compelling interest in the practice of professions within their boundaries[.]" *See also Goldfarb*, 421 U.S. at 792.

Regardless of these questions, we agree with the district court that the Board has a substantial interest in "ensuring the accuracy of commercial information in the marketplace, establishing uniform standards for certification and protecting consumers from misleading professional advertisements." These interests satisfy this part of *Central Hudson*.

## III.     *Directly Advances the Governmental Interest*

Next, we turn to whether the regulation directly advances the substantial governmental interests asserted. *See Central Hudson*, 447 U.S. at 566. This step of the *Central Hudson* analysis "concerns the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001). The Board's burden on this point is significant: "the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful." *Ibanez*, 512 U.S. at 143 (quotation marks omitted). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770–71. The Board may satisfy its burden with

11

"empirical data, studies, and anecdotal evidence," or "'history, consensus, and simple common sense.'" *See Pub. Citizen*, 632 F.3d at 221 (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)).

The Board says it is common sense that Section 108.54 advances the interest in establishing a uniform standard for specialization and allows consumers to distinguish between general dentists and specialists. The Board also submits that Section 108.54 protects consumers from potentially misleading speech. We note that the Board has not done much heavy lifting here. Indeed, it points to the fact that Section 108.54 provides a standard, but it offers no justification for the line that it draws other than its unsupported assertion that the ADA "should maintain the national gold standard . . . ." Its only suggestion as to why the plaintiffs' proposed speech would be misleading is that the speech does not comport with the ADA's list of designated specialties.

The Board attempts to support its position with the personal experiences of Board members and two surveys considered in another case. *See Borgner v. Brooks*, 284 F.3d 1204, 1211–13 (11th Cir. 2002). The personal experiences of the Board members add little to the Board's argument, and the *Borgner* surveys hardly bolster its position. The *Borgner* surveys are not in the record and the district court could not "mak[e] an independent evaluation of their applicability to the facts before it . . . ." Moreover, those surveys were provided in support of a different regulatory regime that permitted "advertisement of an implant dentistry specialty" and membership in a credentialing organization "so long as these statements are accompanied by the appropriate disclaimers." *Id.* at 1210. Doubt has also been raised as to the validity of the surveys. *See id.* at 1217 n.5 (Hill, J., dissenting); *see also Borgner v. Florida Bd. of Dentistry*, 123 S. Ct. 688, 689 (2002) (Thomas, J. & Ginsburg, J., dissenting from denial of certiorari).

The Board also discusses its long history of reliance on the ADA's recognition of specialties. Other states have taken a similar approach. In supplemental briefing, however, the parties identified a recent change in the ADA's own approach to dental-specialty advertising under the ADA Principles of Ethics and Code of Professional Conduct. The ADA now concludes it is ethical for dentists, within certain parameters, to "announce as a specialist to the public" in any of the nine practice areas recognized as specialties by the ADA and "in any other areas of dentistry for which specialty recognition has been granted under the standards required or recognized in the practitioner's jurisdiction . . . ." The ADA observed that "states have begun to recognize specialties beyond the nine dental specialties recognized by the ADA."

The Board has provided little support in its effort to show that Section 108.54 advances the asserted interests in a direct and material way. *See Went For It*, 515 U.S. at 625–26. Ultimately, though, the Board's position collapses for a more fundamental reason: it fails at the outset to "demonstrate that the harms it recites are real . . . ." *See Edenfield*, 507 U.S. at 771. The Board attempts to meet its burden on this point with testimony from several witnesses describing complications experienced when patients visited a general dentist for a procedure that should have been performed by a specialist. One of the Board's members, for example, described treating a patient who experienced complications after visiting a general dentist to have nine implants placed. The patient said, "if I had only known that there was a specialist[.]" Another Board member described a similar problem, testifying that "patients will come to [his specialty] practice after experiencing a complication in a general dentist's office." A third witness testified that the "overall failure rate and complication rate was higher for nonspecialists who were placing dental implants." Nevertheless, harm from a general dentist performing work within an ADA-recognized specialty at a lower quality than

would a specialist is not a harm that Section 108.54 remedies.[2] Section 108.54 regulates how a dentist may advertise his or her practice, not the kind of services a dentist can provide. The Board does not suggest that any of the complications described in the witness testimony were experienced by patients visiting dentists who held themselves out as specialists, but who were not qualified to do so.

In summary, we must examine "the relationship between the harm that underlies the State's interest and the means identified by the State to advance that interest." *Lorillard*, 533 U.S. at 555. The Board does not identify anything else to demonstrate real harms that Section 108.54 alleviates to a material degree. *See Edenfield*, 507 U.S. at 771. Absent that demonstration, and with little support behind its chosen means, we conclude that the Board has not met its burden at this step of the *Central Hudson* analysis.

## IV.     *Not More Extensive than is Necessary*

Even if the Board demonstrated that Section 108.54 directly advanced the interests asserted, it fails to demonstrate that it is "not more extensive than is necessary to serve" those interests. *See Central Hudson*, 447 U.S. at 566. This last step "complements" the third step of the analysis. *See Lorillard*, 533 U.S. at 556. Here, "the Constitution requires 'a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Byrum*, 566 F.3d at 448 (quoting *Bd. of Trs. of the State Univ. of New*

---

[2] In his deposition, one of the plaintiffs in this case stated he was "aware of . . . instances where general dentists, without any form of specialty, have advertised as implant experts and that [has] been a problem[.]" The "problem" was business competition, as the plaintiff wished to advertise that he — unlike those other dentists — was a specialist.

*York v. Fox*, 492 U.S. 469, 480 (1989)). "[T]he existence of 'numerous and obvious less-burdensome alternatives to the restriction on commercial speech . . . is certainly a relevant consideration in determining whether the "fit" between ends and means is reasonable.'" *Went For It*, 515 U.S. at 632 (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993)). The cost of the restriction must be "carefully calculated," and the Board "must affirmatively establish the reasonable fit . . . require[d]." *Fox*, 492 U.S. at 480.

Section 108.54 completely prohibits the plaintiffs from advertising as specialists in their fields solely because the ADA has not recognized their practice areas as specialties. The Board has not justified Section 108.54 with argument or evidence. Without more in the record, we find an improper fit between the means and the objective.

The Board has not suggested it considered less-burdensome alternatives. To the extent that advertising as a specialist is potentially misleading, "a State might consider . . . requiring a disclaimer about the certifying organizations or the standards of a specialty." *See Peel*, 496 U.S. at 110 (plurality opinion). Sufficient disclaimers are a means to address consumer deception. *Pub. Citizen*, 632 F.3d at 223. Indeed, we held in *Public Citizen* that the State failed to meet its burden where it merely submitted a "conclusory statement that a disclaimer could not alleviate [the] concerns" it earlier identified. *Id.* A State might also consider "screening certifying organizations . . . ." *See Peel*, 496 U.S. at 110 (plurality opinion). The California legislature took precisely that approach when regulating the use of the term "board certified" among physicians and surgeons. *See Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1107, 1111 (9th Cir. 2004). Similarly, the district court in our case noted that "[o]ne obvious less-burdensome alternative would be to peg the term 'specialty' or 'specialist' to a set of statutory or regulatory qualifications that signify the credentialing board has met some uniform standard of minimal

competence." This is not a novel approach. For example, one court believed California's regulatory scheme "appeared to rely upon the ADA in making recognition decisions," but in response to a predecessor lawsuit the dental board "developed its own recognition standards which [were] reduced to a proposed regulation." *See Bingham v. Hamilton*, 100 F. Supp. 2d 1233, 1235 (E.D. Cal. 2000). We express no opinion regarding the merits of these alternative approaches, but we note the existence of several less-burdensome alternatives. *See Went For It*, 515 U.S. at 632.

The Board submits that the individual plaintiffs can "engage in a substantial amount of commercial speech regarding their dental practices." The plaintiffs can advertise the credentials they have earned and the services that they provide, albeit within certain parameters. *See* TEX. ADMIN. CODE §§ 108.55, 108.56. Nonetheless, the existence of other forms of commercial speech does not eliminate the overbreadth of the regulation on specialty advertising that is truthful and has not been shown to be misleading commercial speech. The Board's position is especially troublesome because there is no indication whatsoever that it "carefully calculated" the costs associated with Section 108.54. *See Fox*, 492 U.S. at 480.

We do not suggest that the Board may not impose appropriate restrictions in the area of dental specialist advertising. The plaintiffs agree that advertising as a specialist is potentially misleading and that reasonable regulation is appropriate. We hold only that the Board has not met its burden on the record before us to demonstrate that Section 108.54, as applied to these plaintiffs, satisfies *Central Hudson*'s test for regulation of commercial speech. We reiterate a limitation noted by the district court: "While the challenged restriction *might* be permissible in the abstract, it is not permissible on the record currently before the Court."

No. 16-50157

Although the Board has not met its burden in this case, a "regulation that fails *Central Hudson* because of a lack of sufficient evidence may be enacted validly in the future on a record containing more or different evidence." *See Pub. Citizen*, 632 F.3d at 221. Our holding neither forbids nor approves the enactment of a similar regulation supported by better evidence.

\* \* \*

The Texas Academy of Pediatric Dentistry, the Texas Society of Oral and Maxillofacial Surgeons, and the Texas Association of Orthodontists submitted an opposed motion to file an amicus brief. That motion was carried with the case. The motion is DENIED.

AFFIRMED.

17

No. 16-50157

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

I disagree with the majority that Rule 108.54[1] of the Texas Administrative Code is unconstitutional as applied to the plaintiffs (hereinafter collectively referred to as "Academy"). The advertising proposed by Academy is inherently misleading. Misleading commercial speech is not entitled to First Amendment protection. Because I would reverse the district court's grant of summary judgment on Academy's First Amendment claim and its enjoinment of the provision as applied to Academy, I respectfully dissent.

Academy wants to advertise as specialists in certain subsets of dentistry that are not recognized as specialties by the American Dental Association ("ADA") and are prohibited from doing so by the rules of the Texas State Dental Board of Dental Examiners (the "Board"). Academy brought a facial and as-applied constitutional challenge against the Board arguing that Rule 108.54, which regulates specialty advertising for dentists, unconstitutionally infringes on commercial speech protected by the First Amendment.

The district court partially granted both parties' cross-motions for summary judgment. Academy was granted summary judgment on its First Amendment claim, invalidating the ordinance as applied to Academy. The Board was granted summary judgment on Academy's equal protection and due process claims. The Board appeals the First Amendment claim. Academy failed to file a cross-appeal, but then attempts to revive a Fourteenth Amendment due process claim in the appellees' brief.

As the majority correctly states, we apply the four-part test from *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), as follows:

> At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come

---

[1] See Appendix, No. 1, herein for 22 Tex. Admin. Code § 108.54 in its entirety.

18

within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id*. at 566.

As a threshold determination, for commercial speech to be protected under the First Amendment, "it at least must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566. Advertising that is inherently misleading receives no protection, while advertising that is potentially misleading may receive some if it may be presented in a way that is not deceptive. *In re R.M.J.*, 455 U.S. 191, 203 (1982).

This case is analogous to *American Board of Pain Management v. Joseph*, 353 F.3d 1099 (9th Cir. 2004), which involved a California statute that limits a physician from advertising as board certified in a medical specialty without meeting certain requirements. There, the Ninth Circuit said:

> The State of California has by statute given the term "board certified" a special and particular meaning. The use of that term in advertising by a board or individual physicians who do not meet the statutory requirements for doing so, is misleading. The advertisement represents to the physicians, hospitals, health care providers and the general public that the statutory standards have been met, when, in fact, they have not.
>
> Because the Plaintiffs' use of "board certified" is inherently misleading, it is not protected speech. But even if the Plaintiffs' use of "board certified" were merely potentially misleading, it would not change the result in this case, as consideration of the remaining three Hudson factors confirms that the State may restrict the use of the term "board certified" in advertising.

*Joseph*, 353 F.3d at 1108.

No. 16-50157

Such is the case here. Texas has by statute given the term specialist a particular meaning. *See* 22 Tex. Admin. Code § 108.54; *see also* 22 Tex. Admin. Code §§ 119.1-119.9 (setting out special areas of dental practice).

Additionally, it is only "in the context of unregulated dental advertising" that the Board contends the term "specialist" is devoid of intrinsic meaning and is inherently misleading. But with regard to the regulated dental advertising and the recognized specialty areas, the term has a special meaning and special requirements.

Further, the areas that Academy seeks to have designated as specialties are actually more like subsets, which are already encompassed within general dentistry and multiple of the existing recognized specialties. *See* 22 Tex. Admin. Code §§ 119.1-119.9; *see also* Tex. Occ. Code § 251.003 (setting out the provisions of the practice of dentistry). The majority opinion allows that, instead of a general dentist having to comply with the academic, educational or certification necessary to become, for example, a prosthodontist, a general dentist can simply get "certified" in one small aspect of the branch of prosthodontics, i.e., implants, and advertise at the same level as someone who actually completed an advanced degree in an accredited specialty.[2]

The majority relies on *Peel v. Attorney Registration and Disciplinary Commission of Illinois*, 496 U.S. 91 (1990), to conclude that "specialist" is not devoid of intrinsic meaning. In *Peel*, the issue involved letterhead and a statement that the attorney was a "certified civil trial specialist by the National Board of Trial Advocacy." The Court concluded that this was not inherently misleading, saying that "it seems unlikely that petitioner's

---

[2] "Prosthodontics is that branch of dentistry pertaining to the restoration and maintenance of oral functions, comfort, appearance, and health of the patient by the restoration of natural teeth and/or the replacement of missing teeth and contiguous oral and maxillofacial tissues with artificial substitutes." 22 Tex. Admin. Code § 119.8.

statement about his certification as a 'specialist' by an identified national organization necessarily would be confused with formal state recognition." *Id.* at 104-05. The Court further reiterated that a "State may not, however, completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations such as NBTA" and pointed out that "[t]here is no dispute about the bona fides and the relevance of NBTA certification." *Id.* at 110. However, that is not the case here where, as the Board correctly asserts, the term "specialist" may be used without reference to any identified certifying organization and there is a dispute about the bona fides and relevance of the certifications.

Thus, despite what the majority says, the problem is not merely that "the organization responsible for conferring specialist credentials on a particular dentist is not identified in the advertisement." Nevertheless, *Ibanez v. Florida Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy*, 512 U.S. 136, 145, n.9 (1994), is also distinguishable. *Ibanez* involved an attorney who advertised her credentials as CPA (Certified Public Accountant) and CFP (Certified Financial Planner). Again, there were no questions about the certifications. Further, footnote 9, which addressed only a point raised in a separate opinion, says that a consumer could easily verify Ibanez' credentials – as she was indeed a licensed CPA through the Florida Board of Accountancy and also a CFP. More importantly, Ibanez was not practicing accounting. Further, under 22 Tex. Admin. Code §§ 108.56 additional credentials or certifications are clearly allowed to be advertised in Texas.[3]

In *Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Commission*, 24 F.3d 754 (5th Cir. 1994), this court relied on evidence in the record to support the district court's finding that the use of the term "invoice" in the automobile

[3] See Appendix, No. 3, herein for 22 Tex. Admin. Code § 108.56 in its entirety.

industry was inherently misleading.  That evidence included testimony of various car dealers that "invoice" means different things.  *Id.* at 757.  Here, we have testimony that "specialist" in unregulated dental advertising means different things.  The majority's statement that "[h]ere, the individual plaintiffs intend to use 'specialist' in the same manner as dentists practicing in ADA-recognized specialties" is erroneous.  In fact, the plaintiffs intend to use "specialist" to encompass subsets of existing specialties that do not necessarily require the same academic, educational or certification required of the specialties recognized by both the ADA and Texas.

For these reasons, I would conclude that the term "specialist" in the context of unregulated dental advertising is inherently misleading and, thus, not protected by the First Amendment.

Moreover, even if Academy's proposed speech was only potentially misleading, the Board would still be able to regulate it under the remaining elements of the *Central Hudson* test quoted previously herein.  As the Board asserts, the evidence provided, at the very least, creates a question of fact sufficient to survive summary judgment.

The Supreme Court said in *Ibanez*:

> Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *see also id.*, at 564, 100 S.Ct., at 2350 (regulation will not be sustained if it "provides only ineffective or remote support for the government's purpose"); *Edenfield v. Fane*, 507 U.S. 761, 767, 113 S.Ct. 1792, 1798, 123 L.Ed.2d 543 (1993) (regulation must advance substantial state interest in a "direct and material way" and be in "reasonable proportion to the interests served"); *In re R.M.J.*, 455 U.S., at 203, 102 S.Ct., at 937 (State can regulate commercial

speech if it shows that it has "a substantial interest" and that the interference with speech is "in proportion to the interest served").

*Ibanez*, 512 U.S. at 142-43.

The majority acknowledges that the Board has a substantial interest. But, the majority then concludes that the Board has not demonstrated that Rule 108.54 directly advances the asserted interests. I disagree. The Board presented evidence demonstrating how Rule 108.54 would directly and materially advance the asserted interests. That evidence included "empirical data, studies, and anecdotal evidence" or "history, consensus, and simple common sense." *See Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212 (5th Cir. 2011).

The majority dismisses the empirical data and studies referenced in *Borgner v.* Brooks, 284 F.3d 1204, 1211-13 (11th Cir. 2002), because the actual studies are not in the record. The absence of those studies in the record does not undermine the reliability or persuasiveness of the Eleventh Circuit's analysis and conclusions about those same studies including, but not limited to, the following:

> These two surveys, taken together, support two contentions: (1) that a substantial portion of the public is misled by AAID and implant dentistry advertisements that do not explain that AAID approval does not mean ADA or Board approval; and (2) that ADA certification is an important factor in choosing a dentist/specialist in a particular practice area for a large portion of the public.

*Id.* at 1213.

Additionally, the majority dismisses deposition testimony and evidence of complications saying, in part, that the harms would not be remedied by Rule 108.54 because it merely regulates how a dentist may advertise. I disagree. Rule 108.54 regulates what a dentist may hold himself out as being to the public, i.e., a general dentist with or without certain credentials or a specialist.

No. 16-50157

The majority further dismisses witness testimony because it does not necessarily pertain to general dentists who violated the existing rule by holding themselves out as specialists in advertisements.  The point of the testimony was to offer support for the fact that an ADA-recognized specialist has a higher success rate and fewer complications than a general dentist who may perform a subset of those recognized specialties.  Also, what the Board does clearly establish is that the harms Rule 108.54 seeks to prevent are very real.  This was established by way of both anecdotal evidence and simple common sense.  With regard to consensus, the Board introduced evidence that numerous other states limit dental-specialty advertising.

Rules 108.55-56 allow any pertinent information about individual plaintiffs' qualifications to be advertised to consumers.  *See* 22 Tex. Admin. Code §§ 108.55-56.[4]  Rules 108.55-56 also clearly establish that Rule 108.54 is not more extensive than necessary.  Dentists are able to advertise any and all dental credentials and certifications so long as they do not hold themselves out as specialists in areas where they have not complied with the statutory requirements.

Thus, even if the speech was only potentially misleading, I would conclude that the Board can still regulate it under the *Central Hudson* test.

For these reasons, I would reverse the district court's grant of summary judgment on Academy's First Amendment claim and its enjoinment of the provision as applied to Academy.  Therefore, I respectfully dissent.

---

[4] See Appendix, No. 2, herein for 22 Tex. Admin. Code § 108.55 in its entirety.

No. 16-50157

**APPENDIX**

**1**. Rule 108.54 states:

(a) Recognized Specialties. A dentist may advertise as a specialist or use the terms "specialty" or "specialist" to describe professional services in recognized specialty areas that are:

    (1) recognized by a board that certifies specialists in the area of specialty; and

    (2) accredited by the Commission on Dental Accreditation of the American Dental Association.

(b) The following are recognized specialty areas and meet the requirements of subsection (a)(1) and (2) of this section:

    (1) Endodontics;

    (2) Oral and Maxillofacial Surgery;

    (3) Orthodontics and Dentofacial Orthopedics;

    (4) Pediatric Dentistry;

    (5) Periodontics;

    (6) Prosthodontics;

    (7) Dental Public Health;

    (8) Oral and Maxillofacial Pathology; and

    (9) Oral and Maxillofacial Radiology.

(c) A dentist who wishes to advertise as a specialist or a multiple-specialist in one or more recognized specialty areas under subsection (a)(1) and (2) and subsection (b)(1)-(9) of this section shall meet the criteria in one or more of the following categories:

    (1) Educationally qualified is a dentist who has successfully completed an educational program of two or more years in a specialty area accredited by the Commission on Dental Accreditation of the American Dental Association, as specified by the Council on Dental Education of the American Dental Association.

    (2) Board certified is a dentist who has met the requirements of a specialty board referenced in subsection (a)(1) and (2) of this section, and who has received a certificate from the specialty board, indicating the dentist has achieved diplomate status, or has complied with the provisions of § 108.56(a) and (b) of this subchapter (relating to Certifications, Degrees, Fellowships, Memberships and Other Credentials).

    (3) A dentist is authorized to use the term 'board certified' in any advertising for his/her practice only if the specialty

25

board that conferred the certification is referenced in subsection (a)(1) and (2) of this section, or the dentist complies with the provisions of § 108.56(a) and (b) of this subchapter.

(d) Dentists who choose to communicate specialization in a recognized specialty area as set forth in subsection (b)(1)-(9) of this section should use "specialist in" or "practice limited to" and should limit their practice exclusively to the advertised specialty area(s) of dental practice. Dentists may also state that the specialization is an "ADA recognized specialty." At the time of the communication, such dentists must have met the current educational requirements and standards set forth by the American Dental Association for each approved specialty. A dentist shall not communicate or imply that he/she is a specialist when providing specialty services, whether in a general or specialty practice, if he or she has not received a certification from an accredited institution. The burden of responsibility is on the practice owner to avoid any inference that those in the practice who are general practitioners are specialists as identified in subsection (b)(1)-(9) of this section.

22 Tex. Admin. Code § 108.54.

**2**. Rule 108.55 states:

(a) A dentist whose license is not limited to the practice of an ADA recognized specialty identified under § 108.54(b)(1)-(9) of this subchapter (relating to Advertising of Specialties), may advertise that the dentist performs dental services in those specialty areas of practice, but only if the advertisement also includes a clear disclosure that he/she is a general dentist.

(b) Any advertisement of any specific dental service or services by a general dentist shall include the notation "General Dentist" or "General Dentistry" directly after the name of the dentist. The notation shall be in a font size no smaller than the largest font size used to identify the specific dental services being advertised. For example, a general dentist who advertises "ORTHODONTICS" and "DENTURES" and/or "IMPLANTS" shall include a disclosure of "GENERAL DENTIST" or "GENERAL DENTISTRY" in a font size no smaller than the largest font size used for terms 'orthodontics,' 'dentures' and/or 'implants.' Any form of broadcast

No. 16-50157

advertising by a general dentist (radio, television, promotional DVDs, etc) shall include either "General Dentist" or "General Dentistry" in a clearly audible manner.

(c) A general dentist is not prohibited from listing services provided, so long as the listing does not imply specialization. A listing of services provided shall be separate and clearly distinguishable from the dentist's designation as a general dentist.

(d) The provisions of this rule shall not be required for professional business cards or professional letterhead.

22 Tex. Admin. Code § 108.55.

**3**. Rule 108.56 states:

(a) Dentists may advertise credentials earned in dentistry so long as they avoid any communications that express or imply specialization in a recognized specialty, or specialization in an area of dentistry that is not recognized as a specialty, or attainment of an earned academic degree.

(b) A listing of credentials shall be separate and clearly distinguishable from the dentist's designation as a dentist. A listing of credentials may not occupy the same line as the dentist's name and designation as a dentist. Any use of abbreviations to designate credentials shall be accompanied by a definition of the acronym immediately following the credential.
[Image with examples]

(c) The provisions of subsection (b) of this section shall not be required in materials not intended for business promotion or public dissemination, such as peer-to-peer communications.

22 Tex. Admin. Code § 108.56.