United States Court of Appeals,

Fifth Circuit.

No. 93-3288.

JOE CONTE TOYOTA, INC., Plaintiff-Appellant,

v.

LOUISIANA MOTOR VEHICLE COMMISSION, et al., Defendants-Appellees.

July 5, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before ALDISERT[*], REYNALDO G. GARZA and DUHÉ, Circuit Judges.

ALDISERT, Circuit Judge:

This appeal by Joe Conte Toyota, Inc. from a district court judgment dismissing its suit against members of the Louisiana Motor Vehicle Commission requires us to decide whether the court correctly upheld the constitutionality of a state regulation prohibiting any automobile advertisements which contain the term "invoice" on the ground that the term is inherently misleading and, therefore, beyond First Amendment protection. We uphold the constitutionality of the regulation and we will affirm the judgment.

Jurisdiction was proper in the trial court based on 28 U.S.C. § 1331. This court has jurisdiction under 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(a) of the Federal Rules of Appellate Procedure.

I.

---

[*]Circuit Judge of the Third Circuit, sitting by designation.

Section 20 of the Rules and Regulations promulgated by the Commission prohibits the use of the term "invoice" in any advertisement for the sale of a motor vehicle. La.Rev.Stat.Ann. § 32:1253(E). The regulations permit an automobile dealer to advertise the actual proposed selling price of a car or an amount above or below the "Manufacturer's Suggested Retail Price," the standardized price set by the industry for any model car with the same equipment. The asserted purpose of the regulation is to eliminate misleading advertisements.

Appellant proposed to run the following advertisement in a local newspaper offering automobiles for sale:

$49.00 OVER FACTORY INVOICE *

The advertisement copy included a disclaimer:

* Dealer invoice may not reflect actual dealer cost.

Appellant proposed an alternate disclaimer stating:

* Invoice price indicates amount dealer paid distributor for car. Due to various factory rebates, holdbacks and incentives, actual dealer cost is lower than invoice price.

Challenging Section 20 of the Rules and Regulations, Joe Conte Toyota filed a complaint in the district court seeking to enjoin the members of the Motor Vehicle Commission from abridging its right to free speech and seeking a declaratory judgment that the term "invoice," as used in the proposed advertisement, is constitutionally protected speech.

In dismissing the complaint, the district court concluded that the term "invoice" as used in this context was inherently misleading and, therefore, not entitled to First Amendment

protection.

The parties agree that the proposed advertisement is commercial speech and that the Supreme Court has laid out a blueprint for determining whether certain commercial speech is entitled to First Amendment protection:

> In commercial speech cases, then, a four-part analysis has developed.  At the outset, we must determine whether the expression is protected by the First Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial. If both inquires yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

Appellant contends that the district court erred in finding the term "invoice" inherently misleading and, consequently, that it erred in not considering the remaining prongs of the commercial speech test.  Had it conducted a full inquiry, Appellant contends, the court would have concluded that a wholesale ban on the term "invoice" was more extensive than necessary to serve the state's substantial interest in protecting the public.

## II.

In cases raising First Amendment issues, we must " "make an independent examination of the whole record.' " *New York Times Co. v. Sullivan,* 376 U.S. 254, 285, 84 S.Ct. 710, 728-29, 11 L.Ed.2d 686 (1964) (quoting *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963)).  This examination

3

includes an independent review of the trier of fact's findings in support of that judgment. *See, e.g., N.A.A.C.P. v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). Close scrutiny by a reviewing court of certain factual findings is necessary "in cases involving restrictions on the freedom of speech protected by the First Amendment, particularly in those cases in which it is contended that the communication in issue is within one of the few classes of "unprotected' speech." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 503, 104 S.Ct. 1949, 1961, 80 L.Ed.2d 502 (1984). "Independent appellate review of such facts assures that the suppression of protected speech—particularly unpopular or controversial speech—is not insulated from close scrutiny by the straightforward application of the clearly-erroneous rule. The rule thus reflects a special solicitude for claims that the protections afforded by the First Amendment have been unduly abridged." *Planned Parenthood Ass'n v. Chicago Transit Auth.,* 767 F.2d 1225, 1229 (7th Cir.1985).

### III.

We first must ascertain what is meant by the term "misleading" as used by the Court in *Central Hudson.* We find initial guidance in *In re R.M.J.,* 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982), a commercial speech case in which the Court recognized different gradations of misleading commercial speech and their effect on the *Central Hudson* analysis:

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is *inherently* misleading or when experience has proved that

4

> in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of *potentially* misleading information ... if the information also may be presented in a way that is not deceptive.

(emphasis added).

The Court in *In re R.M.J.* suggested that "inherently" misleading advertising may be banned outright, but "potentially" misleading advertising may not. In attempting to understand the distinction, we derive additional guidance from a later commercial speech case, *Peel v. Attorney Disciplinary Commission,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990).

Although there was no majority opinion in *Peel,* the opinions of several justices shed some light on the hierarchy of misleading commercial speech. Furthermore, the Court identified a third category of misleading commercial speech, "actually misleading." *Id.* (Stevens, J.).

Justice Stevens, in an opinion joined by Justice Brennan, Justice Blackmun and Justice Kennedy, suggested that commercial speech is "actually" misleading when there is evidence of deception. *Id.* at 106, 110 S.Ct. at 1694. Justice Marshall agreed that a statement is "actually" misleading when the record contains evidence that recipients of commercial speech "actually ha[ve] been misled by the statement." *Id.* at 112, 110 S.Ct. at 1697 (Marshall, J. and Brennan, J., concurring).

A statement is "inherently" misleading when, notwithstanding a lack of evidence of actual deception in the record, "the particular method by which the information is imparted to consumers

is inherently conducive to deception and coercion." *Id.* (Marshall, J. and Brennan, J., concurring). Included is "commercial speech that is devoid of intrinsic meaning." *Id.* (Marshall, J. and Brennan, J., concurring). In her dissent, Justice O'Connor added that "inherently misleading" means "inherently likely to deceive the public." *Id.* at 121, 110 S.Ct. at 1702 (O'Connor, J., Rehnquist, C.J. and Scalia, J., dissenting). Citing *In re R.M.J.,* Justice Marshall noted that states may prohibit actually or inherently misleading commercial speech entirely. *Id.* at 111, 110 S.Ct. at 1697 (Marshall, J. and Brennan, J., concurring).

From all of this we conclude that a statement is actually or inherently misleading when it deceives or is inherently likely to deceive.

IV.

Ample evidence in the record supports the conclusion that the term "invoice" as used in the proposed advertisement at a minimum is likely to deceive and is therefore inherently misleading.

Joe Conte, the principal of the corporate Appellant, testified that many consumers mistakenly believed that the difference between invoice price and the sale price constituted the dealer's profit.

Raymond Brandt, a car dealer with 10 years experience, testified that "invoice" in relation to price has no fixed meaning among car dealers and that "invoice" price varies over time and from dealer to dealer.

Arthur Tait, a car dealer since 1951, testified that "$49.00 over invoice" gives no information that the consumer can use in

judging the price of a vehicle.

Even where the consumer is shown a manufacturer invoice, a sample invoice from Joe Conte Toyota shows no less than four different "invoice prices": "[A] base vehicle price at dealer's cost of $14,190.00, a base vehicle price with accessories at dealer's cost of $16,407.30, a total vehicle price with advertising expense, inland freight and handling at dealer's cost of $16,929.30, and a net dealer invoice amount of $16,860.00." Brief for Appellee at 11.

In addition, we note that the main text of the proposed advertisement used the term "factory invoice" and the disclaimer, "dealer invoice." Appellant's alternative disclaimer introduced still another expression, the "amount dealer paid distributor." Thus, in the proposed advertisement, the invoices and amounts are attributed to three different sources—the dealer, the factory and the distributor. At best this is difficult for a reader to follow, at worst it is unrelievedly confusing.

The district court concluded that Appellant's proposed advertisement "conveys no useful information to the consumer." *Joe Conte Toyota, Inc. v. Benson,* No. 92-0993, 1993 WL 114507 at *1 (E.D.La. April 6, 1993). It also found that:

> Due to holdbacks, incentives, and rebates, the invoice amount bears little relation to the dealer's true cost. To the extent that the term "invoice" provides any information to the consumer, it is misleading; its use can only be intended to confuse the invoice amount with the dealer's actual cost. Plaintiff in effect concedes this when it offers to explain in its proposed ads that the term "invoice" does not mean what it appears to mean.

*Id.* The court concluded that, because use of the word "invoice" is

7

"calculated to confuse the consumer," it is "inherently misleading and not entitled to protection under the First Amendment. Accordingly, the state may constitutionally ban its use by plaintiff in plaintiff's advertising." *Id.* (footnote omitted).

V.

The Supreme Court of New Jersey is currently the only appellate court to address the constitutionality of a prohibition of the term "invoice" in automobile advertising. The New Jersey Court held that the terms "dealer invoice" and "invoice" in automobile advertisements were misleading and beyond First Amendment protection. *Barry v. Arrow Pontiac, Inc.,* 100 N.J. 57, 494 A.2d 804 (1985). The Court held:

> [T]he term "dealer invoice" has no fixed, ascertainable meaning to the average consumer.... [T]he cost as advertised is not the ultimate cost of the automobile to the dealer. In the context of the sale of new automobiles, we find that the terms "cost," "inventory," and "invoice" are equally amorphous, and hence equally misleading to the public....
>
> [I]t is important that consumers be protected from misleading information.... Hence we conclude that the term "dealer invoice," ... comes within the scope and intendment of that regulation and the Act and that the advertising is misleading and deceptive to the consuming public.
>
> Inasmuch as we find the advertisement to be misleading, we hold that the regulation does not infringe upon [advertiser's] First Amendment right to engage in commercial speech.

*Id.* at 71-72, 494 A.2d 804.

We are persuaded by the reasoning of the New Jersey Supreme Court.[1] We are satisfied that the proposed advertising copy with

---

[1]Appellant attempts to distinguish *Barry* and argues that "the advertisement at issue in *Barry* contained *absolutely no disclaimer or explanatory language.* Here, Conte proposed clearly

8

the suggested alternative disclaimers is inherently misleading.

Because there is ample evidence on the record to support the district court's finding that use of the word "invoice" in automobile advertisement is inherently misleading, its conclusion that the commercial speech in question fell beyond First Amendment protection was not in error. Consequently, there was no need for the court to consider the remaining prongs of the *Central Hudson* test.

## VI.

The judgment of the district court is AFFIRMED.

---

worded disclaimers." Brief for Appellant at 9. Not only is this disclaimer argument of questionable relevance, but Appellant's statement in its brief is not supported by the record in *Barry.* As the dissent in a lower court decision noted, *Barry v. Arrow Pontiac, Inc.,* 193 N.J.Super. 613, 626, 475 A.2d 632 (1984) (Botter, J., dissenting), and as the New Jersey Supreme Court confirmed, *Barry,* 100 N.J. at 77, 494 A.2d 804 (Clifford, J. and Stein, J., dissenting):

> It is advantageous for buyers to know at least the amount of the dealer's invoice price. If the fear is that they will not avail themselves of information in the public domain, namely, that dealer invoice price does not mean actual cost, a simple remedy can be supplied by tailoring the regulation to meet this need. *It is worth repeating that the invoice in evidence contains this notice to prospective buyers.*

(emphasis added).