JAMES E. GRAVES, JR., Circuit Judge,
dissenting:
I disagree with the majority that Rule 108.54[1] of the Texas Administrative Code is unconstitutional as applied to the plain *313 tiffs (hereinafter collectively referred to as “Academy”)- The advertising proposed by Academy is inherently misleading. Misleading commercial speech is not entitled to First Amendment protection. Because I would reverse the district court’s grant of summary judgment on Academy’s First Amendment claim and its enjoinment of the provision as applied to Academy, I respectfully dissent.
Academy wants to advertise as specialists in certain subsets of dentistry that are not recognized as specialties by the American Dental Association (“ADA”) and are prohibited from doing so by the rules of the Texas State Dental Board of Dental Examiners (the “Board”). Academy brought a facial and as-applied constitutional challenge against the Board arguing that Rule 108.54, which regulates specialty advertising for dentists, unconstitutionally infringes on commercial speech protected by the First Amendment.
The district court partially granted both parties” cross-motions for summary judgment. Academy was granted summary judgment on its First Amendment claim, invalidating the ordinance as applied to Academy. The Board was granted summary judgment on Academy’s equal protection and due process claims. The Board appeals the First Amendment claim. Academy failed to file a cross-appeal, but then attempts to revive a Fourteenth Amendment due process claim in the appellees’ brief.
As the majority correctly states, we apply the four-part test from Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of New York, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), as follows:
At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.
Id. at 566,100 S.Ct. 2343.
As a threshold determination, for commercial speech to be protected under the First Amendment, “it at least must concern lawful activity and not be misleading.” Central Hudson, 447 U.S. at 566, 100 S.Ct. 2343. Advertising that is inherently misleading receives no protection, while advertising that is potentially misleading may receive some if it may be presented in a way that is not deceptive. In re R.M.J., 455 U.S. 191, 203, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982).
This case is analogous to American Board of Pain Management v. Joseph, 353 F.3d 1099 (9th Cir. 2004), which involved a California statute that limits a physician from advertising as board certified in a medical specialty without meeting certain requirements. There, the Ninth Circuit said:
The State of California has by statute given the term “board certified” a special and particular meaning. The use of that term in advertising by a board or individual physicians who do not meet the statutory requirements for doing so, is misleading. The advertisement represents to the physicians, hospitals, health care providers and the general public that the statutory standards have been met, when, in fact, they have not.
Because the Plaintiffs’ use of “board certified” is inherently misleading, it is not protected speech. But even if the Plaintiffs’ use of “board certified” were mere *314 ly potentially misleading, it would not change the result in this case, as consideration of the remaining three Hudson factors confirms that the State may restrict the use of the term “board certified” in advertising.
Joseph, 353 F.3d at 1108.
Such is the case here. Texas has by statute given the term specialist a particular meaning. See 22 Tex. Admin. Code § 108.54; see also 22 Tex. Admin. Code §§ 119.1-119.9 (setting out special areas of dental practice).
Additionally, it is only “in the context of unregulated dental advertising” that the Board contends the term “specialist” is devoid of intrinsic meaning and is inherently misleading. But with regard to the regulated dental advertising and the recognized specialty areas, the term has a special meaning and special requirements.
Further, the areas that Academy seeks to have designated as specialties are actually more like subsets, which are already encompassed within general dentistry and multiple of the existing recognized specialties. See 22 Tex. Admin. Code §§ 119.1-119.9; see also Tex. Occ. Code § 251.003 (setting out the provisions of the practice of dentistry). The majority opinion allows that, instead of a general dentist having to comply with the academic, educational or certification necessary to become, for example, a prosthodontist, a general dentist can simply get “certified” in one small aspect of the branch of prosthodontics, i.e., implants, and advertise at the same level as someone who actually completed an advanced degree in an accredited specialty.[2]
The majority relies on Peel v. Attorney Registration and Disciplinary Commission of Illinois, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), to conclude that “specialist” is not devoid of intrinsic meaning. In Peel, the issue involved letterhead and a statement that the attorney was a “certified civil trial specialist by the National Board of Trial Advocacy.” The Court concluded that this was not inherently misleading, saying that “it seems unlikely that petitioner’s statement about his certification as a ‘specialist’ by an identified national organization necessarily would be confused with formal state recognition.” Id. at 104-05, 110 S.Ct. 2281. The Court further reiterated that a “State may not, however, completely ban statements that are not actually or inherently misleading, such as certification as a specialist by bona fide organizations such as NBTA” and pointed out that “[tjhere is no dispute about the bona fides and the relevance of NBTA certification.” Id. at 110, 110 S.Ct. 2281. However, that is not the case here where, as the Board correctly asserts, the term “specialist” may be used without reference to any identified certifying organization and there is a dispute about the bona fides and relevance of the certifications.
Thus, despite what the majority says, the problem is not merely that “the organization responsible for conferring specialist credentials on a particular dentist is not identified in the advertisement.” Nevertheless, Ibanez v. Florida Dep’t of Bus. & Prof'l Regulation, Bd. of Accountancy, 512 U.S. 136, 145, n.9, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994), is also distinguishable. Ibanez involved an attorney who advertised her credentials as CPA (Certified Public Accountant) and CFP (Certified Financial Planner). Again, there were no questions about the certifications. Further, *315 footnote 9, which addressed only a point raised in a separate opinion, says that a consumer could easily verify Ibanez’ credentials—as she was indeed a licensed CPA through the Florida Board of Accountancy and also a CFP. More importantly, Ibanez was not practicing accounting. Further, under 22 Tex. Admin. Code §§ 108.56 additional credentials or certifications are clearly allowed to be advertised in Texas.[3]
In Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Commission, 24 F.3d 754 (5th Cir. 1994), this court relied on evidence in the record to support the district court’s finding that the use of the term “invoice” in the automobile industry was inherently misleading. That evidence included testimony of various car dealers that “invoice” means different things. Id. at 757. Here, we have testimony that “specialist” in unregulated dental advertising means different things. The majority’s statement that “[h]ere, the individual plaintiffs intend to use ‘specialist’ in the same manner as dentists practicing in ADA-recognized specialties” is erroneous. In fact, the plaintiffs intend to use “specialist” to encompass subsets of existing specialties that do not necessarily require the same academic, educational or certification required of the specialties recognized by both the ADA and Texas.
For these reasons, I would conclude that the term “specialist” in the context of unregulated dental advertising is inherently misleading and, thus, not protected by the First Amendment.
Moreover, even if Academy’s proposed speech was only potentially misleading, the Board would still be able to regulate it under the remaining elements of the Central Hudson test quoted previously herein. As the Board asserts, the evidence provided, at the very least, creates a question of fact sufficient to survive summary judgment.
The Supreme Court said in Ibanez:
Commercial speech that is not false, deceptive, or misleading can be restricted, but only if the State shows that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n of N.Y., 447 U.S. 557, 566, 100 S.Ct. 2843, 2351, 65 L.Ed.2d 341 (1980); see also id., at 564, 100 S.Ct. at 2350 (regulation will not be sustained if it “provides only ineffective or remote support for the government’s purpose”); Edenfield v. Fane, 507 U.S. 761, 767, 113 S.Ct. 1792, 1798, 123 L.Ed.2d 543 (1993) (regulation must advance substantial state interest in a “direct and material way” and be in “reasonable proportion to the interests served”); In re R.M.J., 455 U.S., at 203, 102 S.Ct. at 937 (State can regulate commercial speech if it shows that it has “a substantial interest” and that the interference with speech is “in proportion to the interest served”).
Ibanez, 512 U.S. at 142-43, 114 S.Ct. 2084.
The majority acknowledges that the Board has a substantial interest. But, the majority then concludes that the Board has not demonstrated that Rule 108.54 directly advances the asserted interests. I disagree. The Board presented evidence demonstrating how Rule 108.54 would directly and materially advance the asserted interests. That evidence included “empirical data, studies, and anecdotal evidence” or “history, consensus, and simple common sense.” See Pub. Citizen Inc. v. La. Attorney Disciplinary Bd., 632 F.3d 212 (5th Cir. 2011).
*316 The majority dismisses the empirical data and studies referenced in Borgner v. Brooks, 284 F.3d 1204, 1211-13 (11th Cir. 2002), because the actual studies are not in the record. The absence of those studies in the record does not undermine the reliability or persuasiveness of the Eleventh Circuit’s' analysis and conclusions about those same studies including, but not limited to, the following:
These two surveys, taken together, support two contentions: (1) that a substantial portion of the public is misled by AAID and implant dentistry advertisements that do not explain that AAID approval does not mean ADA or Board approval; and (2) that ADA certification is an important factor in choosing a dentist/speeialist in a particular practice area for a large portion of the public.
Id. at 1213.
Additionally, the majority dismisses deposition testimony and evidence of complications saying, in part, that the harms would not be remedied by Rule 108.54 because it merely regulates how a dentist may advertise. I disagree. Rule 108.54 regulates what a dentist may hold himself out as being to the public, i.e., a general dentist with or without certain credentials or a specialist. The majority further dismisses witness testimony because it does not necessarily pertain to general dentists who violated the existing rule by holding themselves out as specialists in advertisements. The point of the testimony was to offer support for the fact that an ADA-recognized specialist has a higher success rate and fewer complications than a general dentist who may perform a subset of those recognized specialties. Also, what the Board does clearly establish is that the harms Rule 108.54 seeks to prevent are very real. This was established by way of both anecdotal evidence and simple common sense. With regard to consensus, the Board introduced evidence that numerous other states limit dental-specialty advertising.
Rules 108.55-56 allow any pertinent information about individual plaintiffs’ qualifications to be advertised to consumers. See 22 Tex. Admin. Code §§ 108.55-56.[4] Rules 108.55-56 also clearly establish that Rule 108.54 is not more extensive than necessary. Dentists are able to advertise any and all dental credentials and certifications so long as they do not hold themselves out as specialists in areas where they have not complied with the statutory requirements.
Thus, even if the speech was only potentially misleading, I would conclude that the Board can still regulate it under the Central Hudson test.
For these reasons, I would reverse the district court’s grant of summary judgment on Academy’s First Amendment claim and its enjoinment of the provision as applied to Academy. Therefore, I respectfully dissent.
APPENDIX
1. Rule 108.54 states:
(a) Recognized Specialties. A dentist may advertise as a specialist or use the terms “specialty” or “specialist” to describe professional services in recognized specialty areas that are:
(1) recognized by a board that certifies specialists in the area of specialty; and
(2) accredited by the Commission on Dental Accreditation of the American Dental Association.
*317 (b) The following are recognized specialty areas and meet the requirements of subsection (a)(1) and (2) of this section:
(1) Endodontics;
(2) Oral and Maxillofacial Surgery;
(3) Orthodontics and Dentofacial Orthopedics;
(4) Pediatric Dentistry;
(5) Periodontics;
(6) Prosthodontics;
(7) Dental Public Health;
(8) Oral and Maxillofacial Pathology; and
(9) Oral and Maxillofacial Radiology.
(c) A dentist who wishes to advertise as a specialist or a multiple-specialist in one or more recognized specialty areas under subsection (a)(1) and (2) and subsection (b)(l)-(9) of this section shall meet the criteria in one or more of the following categories:
(1) Educationally qualified is a dentist who has successfully completed an educational program of two or more years in a specialty area accredited by the Commission on Dental Accreditation of the American Dental Association, as specified by the Council on Dental Education of the American Dental Association.
(2) Board certified is a dentist who has met the requirements of a specialty board referenced in subsection (a)(1) and (2) of this section, and who has received a certificate from the specialty board, indicating the dentist has achieved diplómate status, or has complied with the provisions of § 108.56(a) and (b) of this subchapter (relating to Certifications, Degrees, Fellowships, Memberships and Other Credentials).
(3) A dentist is authorized to use the term ‘board certified’ in any advertising for his/her practice only if the specialty board that conferred the certification is referenced in subsection (a)(1) and (2) of this section, or the dentist complies with the provisions of § 108.56(a) and (b) of this subchapter,
(d)Dentists who choose to communicate specialization in a recognized specialty area as set forth in subsection (b)(l)-(9) of this section should use “specialist in” or “practice limited to” and should limit their practice exclusively to the advertised specialty area(s) of dental practice. Dentists may also state that the specialization is an “ADA recognized specialty.” At the time of the communication, such dentists must have met the current educational requirements and standards set forth by the American Dental Association for each approved specialty. A dentist shall not communicate or imply that he/she is a specialist when providing specialty services, whether in a general or specialty practice, if he or she has not received a certification from an accredited institution. The burden of responsibility is on the practice owner to avoid any inference that those in the practice who are general practitioners are specialists as identified in subsection (b)(l)-(9) of this section.
22 Tex. Admin. Code § 108.54.
2. Rule 108.55 states:
(a) A dentist whose license is not limited to the practice of an ADA recognized specialty identified under § 108.54(b)(1)-(9) of this subchapter (relating to Advertising of Specialties), may advertise that the dentist performs dental services in those specialty areas of practice, but only if the advertisement also includes a clear disclosure that he/she is a general dentist.
(b) Any advertisement of any specific dental service or services by a general dentist shall include the notation “Gen *318 eral Dentist” or “General Dentistry” directly after the name of the dentist. The notation shall be in a font size no smaller than the largest font size used to identify the specific dental services being advertised. For example, a general dentist who advertises “ORTHODONTICS” and “DENTURES” and/or “IMPLANTS” shall include a disclosure of “GENERAL DENTIST” or “GENERAL DENTISTRY” in a font size no smaller than the largest font size used for terms ‘orthodontics,’ ‘dentures’ and/or ‘implants.’ Any form of broadcast advertising by a general dentist (radio, television, promotional DVDs, etc) shall include either “General Dentist” or “General Dentistry” in a clearly audible manner.
(c) A general dentist is not prohibited from listing services provided, so long as the listing does not imply specialization. A listing of services provided shall be separate and clearly distinguishable from the dentist’s designation as a general dentist.
(d) The provisions of this rule shall not be required for professional business cards or professional letterhead.
22 Tex. Admin. Code § 108.55.
3. Rule 108.56 states:
(a) Dentists may advertise credentials earned in dentistry so long as they avoid any communications that express or imply specialization in a recognized specialty, or specialization in an area of dentistry that is not recognized as a specialty, or attainment of an earned academic degree.
(b) A listing of credentials shall be separate and clearly distinguishable from the dentist’s designation as a dentist. A listing of credentials may not occupy the same line as the dentist’s name and designation as a dentist. Any use of abbreviations to designate credentials shall be accompanied by a definition of the acronym immediately following the credential. [Image with examples]
(c)The provisions' of subsection (b) of this section shall not be required in materials not intended for business promotion or public dissemination, such as peer-to-peer communications.
22 Tex. Admin. Code § 108.56.

. See Appendix, No. 1, herein for 22 Tex. Admin. Code § 108.54 in its entirety.

. "Prosthodontics is that branch of dentistry pertaining to the restoration and maintenance of oral functions, comfort, appearance, and health of the patient by the restoration of natural teeth and/or the replacement of missing teeth and contiguous oral and maxillofa-cial tissues with artificial substitutes.” 22 Tex. Admin. Code § 119.8.

. See Appendix, No. 3, herein for 22 Tex. Admin. Code § 108.56 in its entirety.

. See Appendix, No. 2, herein for 22 Tex. Admin. Code § 108.55 in its entirety.