# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60144

United States Court of Appeals
Fifth Circuit

**FILED**
February 19, 2019

Lyle W. Cayce
Clerk

EXPRESS OIL CHANGE, L.L.C.; TE, L.L.C.,
doing business as Tire Engineers,

> Plaintiffs–Appellants,

versus

MISSISSIPPI BOARD OF LICENSURE FOR PROFESSIONAL
ENGINEERS & SURVEYORS; TERRELL TEMPLE, in their individual and
official capacities as the members of the Mississippi Board of Licensure for
Professional Engineers & Surveyors; RICK TURNER, in their individual and
official capacities as the members of the Mississippi Board of Licensure for
Professional Engineers & Surveyors; JOSEPH FRANKLIN LAUDERDALE,
in their individual and official capacities as the members of the Mississippi
Board of Licensure for Professional Engineers & Surveyors; JOSEPH E.
LAUDERDALE, in their individual and official capacities as the members of
the Mississippi Board of Licensure for Professional Engineers & Surveyors;
BENNIE J. SELLERS, in their individual and official capacities as the
members of the Mississippi Board of Licensure for Professional Engineers &
Surveyors; DR. DENNIS D. TRUAX, in their individual and official capacities
as the members of the Mississippi Board of Licensure for Professional
Engineers & Surveyors; JAMES MATTHEW RANKIN, in their individual
and official capacities as the members of the Mississippi Board of Licensure
for Professional Engineers & Surveyors; JOE W. BYRD, in their individual
and official capacities as the members of the Mississippi Board of Licensure
for Professional Engineers & Surveyors; SHANNON D. TIDWELL, in their
individual and official capacities as the members of the Mississippi Board of
Licensure for Professional Engineers & Surveyors,

> Defendants–Appellees.

No. 18-60144

Appeal from the United States District Court
for the Southern District of Mississippi

Before SMITH, BARKSDALE, and HO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Mississippi regulates the practice of engineering and restricts the use of the term "engineer." Express Oil Change ("Express") operates several automotive service centers in Mississippi under the name "Tire Engineers." In 2015, the Mississippi Board of Licensure for Professional Engineers & Surveyors ("the Board") determined that the name "Tire Engineers" violated the pertinent statutes and requested that Express cease using it. Following protracted correspondence, the parties could not reach a compromise, and Express sued for a declaratory judgment and related relief. The company contended, *inter alia*, that the relevant statutory provisions violate the First Amendment as incorporated through the Due Process Clause of the Fourteenth Amendment. After discovery, the district court granted the Board's motion for summary judgment and dismissed. Because the Board's decision violates the First Amendment's commercial speech protections, we reverse and render judgment for Express.

I.

Mississippi regulates several professions and the use of certain terms and phrases associated with those occupations. *See, e.g.*, MISS. CODE ANN. § 73-1-1 *et seq.* (West 2018). Relevant here, the state regulates the practice of engineering, *id.* §§ 73-13-1 to -45, and restricts, *inter alia*, the use of the term "engineer." *Id.* § 73-13-39. Violating the statute is punishable by civil and criminal penalties, including fines and imprisonment. *Id.* §§ 73-13-37 to -39.

2

No. 18-60144

Express operates a number of automotive service centers in Mississippi under the Tire Engineers mark. According to Express, Tire Engineers provides "oil changes, car repairs, and tire services—repair, maintenance, and replacement—to customers in fifteen states, including Mississippi."

In February 2015, the Board informed Express that the name Tire Engineers violated § 73-13-39 and "respectfully request[ed] that Tire Engineers change its company advertisement name in Mississippi and use an alternate title such as 'technicians' or 'experts' and that the engineer title be omitted." In June 2016, after the parties were unable to agree, Express sued, seeking a declaratory judgment and related relief on three theories: first, that the Board's decision concerning the use of the term engineer violated Mississippi law; second, that it violated Express's "rights of commercial free speech guaranteed by the First Amendment"; and third, that the decision violated Express's "rights under preemptive federal trademark law [pursuant to] the Lanham Trademark Act of 1946, 15 U.S.C. §§ 1051–1127."

Following discovery, the parties filed cross-motions for summary judgment. The district court granted the Board's motion and denied as moot all other pending motions. Express raises only its constitutional claim on appeal.

II.

EOC appeals the summary judgment in favor of the Board. A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). We review a summary judgment *de novo*. *Pub. Citizen, Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 218 (5th Cir. 2011). Where "the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw

3

No. 18-60144

inferences and conclusions."[1]   In cases involving cross-motions for summary judgment, "the motions are reviewed independently, with evidence and inferences taken in the light most favorable to the nonmoving party." *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

## A.

"In order to safeguard life, health, and property, and to promote the public welfare," MISS. CODE ANN. § 73-13-1, the state regulates the engineering profession. *Id.* §§ 73-13-1 to -45.  Consequently, no "person or firm [is permitted to] practice, or offer to practice, engineering in [Mississippi] without being licensed in accordance with" state law. *Id.* § 73-13-39.

> Unless licensed in accordance with the provisions of [§§ 73-13-1 to -45], no person shall . . . [d]irectly or indirectly employ, use, cause to be used or make use of any of the following terms . . . as a professional, business or commercial identification, title, [or] name . . . : 'engineer,' . . . .

*Id.* In challenging that language, Express contends that the Tire Engineers trademark is protected by the First Amendment.

Although the Constitution protects commercial speech,[2] that protection is more limited than for most other speech. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978).  The test for when a government actor may regulate commercial speech is as follows:

---

[1] *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991) (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).  This court has previously treated the dismissal of a cross motion for summary judgment on mootness grounds as a denial. *See, e.g., Browdy v. Hartford Life & Accident Ins. Co.*, 630 F. App'x 278, 285 (5th Cir. 2015); *Gulf Underwriters Ins. Co. v. Great W. Cas. Co.*, 278 F. App'x 454, 456–57 (5th Cir. 2008); *see also Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

[2] *See, e.g., Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976); *Bigelow v. Virginia*, 421 U.S. 809, 818 (1975).  Commercial speech is "[e]xpression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).

No. 18-60144

At the outset, [a court] must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, [a court] ask[s] whether the asserted governmental interest is substantial. If both inquiries yield positive answers, [a court] must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson*, 447 U.S. at 566. "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983). This "burden is a 'heavy' one," *Pub. Citizen, Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 218 (5th Cir. 2011) (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996)), and may not be "satisfied 'by mere speculation or conjecture,'" *id.* (quoting *Edenfield v. Fane*, 507 U.S. 761, 770 (1993)).

## B.

"In order for commercial speech to be protected under the First Amendment, 'it at least must concern lawful activity and not be misleading.'" *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017) (quoting *Cent. Hudson*, 447 U.S. at 566). Commercial statements that are actually or inherently misleading do not enjoy the protections of the First Amendment.[3] "[A] statement is actually or inherently misleading when it deceives or is inherently likely to deceive." *Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*, 24 F.3d 754, 756 (5th Cir. 1994). Statements that are only *potentially* misleading, however, are safeguarded by the First Amendment.[4] In such a case, a

---

[3] *See, e.g.*, *Peel v. Att'y Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 100 (1990) (plurality opinion); *In re R.M.J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely.").

[4] *R.M.J.*, 455 U.S. at 203 ("States may not place an absolute prohibition on certain types of potentially misleading information . . . if the information also may be presented in a way that is not deceptive.").

No. 18-60144

state actor must "'show[] that the restriction directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest.'"  *Am. Acad.,* 860 F.3d at 308–09 (alteration in original) (quoting *Ibanez v. Fla. Dep't of Bus. & Prof'l Reg., Bd. of Accountancy*, 512 U.S. 136, 142 (1994)).

### 1. *Inherently Misleading*

The district court found that "[Express's] use of the name 'Tire Engineers' is 'inherently likely to deceive' Mississippi consumers to believe that the services performed at Tire Engineers are performed by tire engineers or under the supervision of tire engineers."  The court ruled for the Board based on "substantial evidence" that tended to show "the term 'tire engineers' is used by courts, universities, tire manufacturers, tire manufacturers, general periodicals, specialized periodicals, and the general public to refer to actual engineers who have expertise in the manufacture, selection, and repair of tires."

Express asserts that the Tire Engineers trademark is "capable of being employed in a non-deceptive manner" and thus "cannot be deemed 'inherently' misleading."[5]  Express also contends that "[t]he term 'engineer' is commonly used to describe jobs and trades other than professional engineering."[6]  In

---

[5] Express contends that the trademark Tire Engineers may be distinguished from the advertisement in *Joe Conte Toyota*, in which this court determined that an advertisement using the phrase "$49.00 over invoice," 24 F.3d at 757, was inherently misleading because it was "calculated to confuse the consumer."  *Id.* (quoting *Joe Conte Toyota, Inc. v. Benson*, No. 92–0993, 1993 WL 114507 at *2 (E.D. La. Apr. 6, 1993)).  Express asserts, in contrast to the advertisement in *Joe Conte Toyota*, that its "trade name and service mark . . . brands all of Tire Engineers' automotive services uniformly"; Express contends that "the Tire Engineers trade name and service mark are not 'useless' information. . . . [T]he mark tells consumers that the business provides some level of technical services for tires and other automotive maintenance and repair."

[6] In support of this second point, Express asserts that we have rejected the "circular" reasoning that a term "is inherently misleading because it does not conform to [a state actor's] definition . . . of the term."  *See Am. Acad.*, 860 F.3d at 308 (discussing the use of "specialist"

response, the Board avers that the name Tire Engineers is "demonstratively false" and "likely to deceive the public into believing that the work performed at Tire Engineers is either done by tire engineers or under the supervision of tire engineers" (internal quotation marks omitted).[7] The Board also points to evidence from a survey conducted by the Center for Research and Public Policy in which "[s]ixty-six percent of the respondents expected that Tire Engineers 'has professional engineers on staff,'" and "[f]ifty-eight percent [of respondents] expected Tire Engineers to use engineers to service tires." Additionally, the Board highlights an Express advertisement claiming that "[a]ll of our Express Oil Change & Tire Engineers have tire engineers who are qualified to [service] . . . tires . . . ."[8] The Board contends that that advertisement is further evidence that "[t]he overlap between the public's knowledge of the work of actual tire engineers and the services provided by Tire Engineers is actively, easily, and inherently exploited by its name and the manner it uses its name in advertisements." As we explain, the better view is that the district court erred in concluding that Express's use of Tire Engineers is inherently misleading.

"Engineer" is defined, *inter alia*, as "a person who carries through an enterprise or brings about a result esp[ecially] by skillful or artful contrivance" or "a person who is trained or skilled in the technicalities of some field ([such] as sociology or insurance) not usu[ally] considered to fall within the scope of

---

in the context of dentistry); *Byrum v. Landreth*, 566 F.3d 442, 447–48 (5th Cir. 2009) (examining "interior designer" and "interior design").

[7] The Board highlights evidence demonstrating that there is a distinct category of engineers known as "tire engineers," with expertise in topics such as "how to choose the right tire for your car," "using tires for better gas mileage," and "when a tire must be replaced rather than repaired."

[8] Express discontinued use of the line "Tire Engineers have tire engineers" in September 2017.

engineering and who is engaged in using such training or skill in the solution of technical problems." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED 752 (1986). "Inherent" is defined as "involved in the . . . essential character of something . . . ." *Id.* at 1163.[9]

Because its essential character is not deceptive, Tire Engineers is not inherently misleading. The name, first trademarked in 1948, apparently refers to the work of mechanics using their skills "not usu[ally] considered to fall within the scope of engineering" to solve "technical problems" related to selecting, rotating, balancing, and aligning tires. *Id.* at 752. That this definition of "engineer" does not meet the Board's preferred definition does not make its use inherently misleading.[10] The term "engineer" can mean many things in different contexts, and it is certainly not limited to those professionals licensed by Mississippi to practice engineering. It is not, therefore, "devoid of intrinsic meaning." *Joe Conte Toyota*, 24 F.3d at 756 (quoting *Peel*, 496 U.S. at 112 (Marshall, J., concurring)). Additionally, as Express explains, "[t]he district court's analysis failed to account for the manner in which the [Tire Engineers] mark is transmitted—on the company's website, which describes

---

[9] "Engineer" is elsewhere similarly defined, *inter alia*, as "a person who designs or builds engines or other machinery, . . . a person who uses specialized knowledge or skills to design, build, and maintain complicated equipment, systems, processes" or "a person considered to have specialized knowledge or skills in a particular field, *esp.* one who attempts to influence or manipulate human affairs according to scientific or technical principles." Oxford English Dictionary (online ed.) http://www.oed.com/view/Entry/62225?result= 1&rskey=Lbxzu5&#contentWrapper. "Inherent" is defined as "fixed, situated, or contained in something" or "existing in something as a permanent attribute or quality; forming an element." *Id.* (online ed.) http://www.oed.com/view/Entry/95945?redirectedFrom= inherent#eid.

[10] *Am. Acad.*, 860 F.3d at 307–08 ("The problem here is the absence of any group imprimatur behind the label 'specialist.' Nonetheless, the term 'specialist' is not rendered devoid of intrinsic meaning, and thereby inherently misleading, simply because the organization responsible for conferring specialist credentials on a particular dentist is not identified in the advertisement."); *see also Byrum*, 566 F.3d at 447.

No. 18-60144

its automotive services (not any professional engineering services), and at its retail stores, which appear like any other store that performs automotive services . . . ." Consequently, viewing the evidence in a light most favorable to the non-moving party[11]—here, Express—the use of Tire Engineers is not inherently misleading under our precedent.[12]

## 2. *Actually Misleading*

The district court separately determined that "[Express's] use of 'Tire Engineers' is also actually misleading to Mississippi consumers and is not protected by the First Amendment." The court pointed to evidence from the telephonic public opinion poll commissioned by the Board, including that "[a]lmost half of the respondents (47.8%) believed that a company [using] the name 'Tire Engineers' performs engineering services for tires." The court ultimately concluded that this "survey confirmed that Mississippi consumers are actually deceived by the business name 'Tire Engineers.'"

Express maintains that Tire Engineers is not actually misleading

---

[11] The Board's survey cuts both ways with respect to this court's analysis of the term "inherently misleading." For example, researchers asked the following: "The company 'Tire Engineers' advertises that it has 'qualified personnel' to repair tires. As a result of this advertising how strongly do you expect the following[:] . . . That the company, Tire Engineers, is performing engineering services." Forty-four percent of those surveyed responded that they "[n]ot [v]ery [s]trongly or [n]ot at all [e]xpect[ed]" Tire Engineers to perform such services or that they were "unsure." Additionally, though "[j]ust over one-half of all respondents with an opinion, [fifty-five percent], suggested they believed a company that uses the name 'Tire Engineers' performs engineering services for tires," nearly forty-five percent of respondents stated that they did not share this belief. While this suggests that the name is potentially misleading, it also suggests that the name is not inherently—that is, its essential character is not—misleading.

[12] Conversely, because we review cross-motions for summary judgment independently, we must also analyze this issue in a light most favorable to the Board. Such an exercise involves dismissing, as the district court did, the findings of the Alabama, Florida, Georgia, North Carolina, South Carolina, Tennessee, and Virginia agencies that "Tire Engineers" is not inherently misleading. Even in such a case, however, the evidence is insufficient to support a conclusion that the name at issue is inherently misleading.

because the Board failed to submit evidence of "any actual consumer being misled by the Tire Engineers trademark." Express highlights a case that found the use of the trade name "Cajun Boy" was not actually misleading because "[t]he record contain[ed] no evidence of *actual* deception." *Piazza's Seafood World, LLC v. Odom*, No. Civ. A. 04-690, 2004 WL 2998575, at \*5 (E.D. La. Dec. 23, 2004). We affirmed "the district court's decision as to the Cajun Statute essentially for the reasons stated by the district court." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 753 (5th Cir. 2006).

In response, the Board asserts that "[a]mple and uncontradicted summary judgment evidence establishes that the name Tire Engineers actually misleads Mississippi consumers into believing that the work done by Tire Engineers is either performed by engineers or under the supervision of engineers." The Board contends that the survey evidence it submitted was sufficient to sustain a finding that the public was actually misled by this commercial speech. It defends, at some length, the survey methodology, ultimately concluding that "[u]nder no evaluation of the record would [Express] be entitled to summary judgment."

A review of Supreme Court and Fifth Circuit precedent shows that the district court erred in deciding that the Tire Engineers name is actually misleading. In *Peel*, a four-Justice plurality suggested that evidence of deception is necessary to sustain a finding that commercial speech is actually misleading—a conclusion that the concurring and dissenting justices did not dispute.[13] Based on *Peel*, as well as our own precedent, *Joe Conte Toyota*,

---

[13] *Peel*, 496 U.S. at 106 (plurality opinion) ("Given the complete absence of any evidence of deception in the present case, we must reject the contention that petitioner's letterhead is actually misleading."). Additionally, three Justices in dissent appeared to adopt the plurality's "actually misleading" standard, although they took issue with other parts of the plurality opinion. *Id.* at 120 (O'Connor, J., dissenting) ("The plurality in this case correctly

No. 18-60144

24 F.3d at 756, the Board was required to present evidence of deception. Because it did not, the district court erred in concluding that the Tire Engineers mark was actually misleading.[14]  Given that the name is neither actually nor inherently misleading, it enjoys limited First Amendment protections, as discussed in *Central Hudson*.

### 3. *Potentially Misleading*

The district court also determined that the name is potentially misleading, even under *Central Hudson*.  Finding that the evidence in the record satisfied *Central Hudson* scrutiny, the court emphasized two harms remedied by "[p]rohibiting [Express] from promoting itself as 'Tire Engineers.'"  "First, a majority of Mississippians believe that the work performed by [Express] is of the same skill, judgment, and quality associated with licensed, professional engineers."  Second, "[Express's] use of the name 'Tire Engineers' and its description of its employees as 'tire engineers' leads to confusion about the qualifications and skill of actual licensed engineers."

Express contends that Tire Engineers is not potentially misleading because "[i]t is apparent to all reasonable consumers who encounter the Tire Engineers trademark in [the context of the company's website and retail stores] that the company provides routine automotive maintenance and repair."  Additionally, even if the name is potentially misleading, Express maintains that "a complete ban on the Tire Engineers name and mark is 'more

---

notes that the statements in petitioner's letterhead have not been shown actually to deceive consumers . . . .").  In a concurring opinion, two other justices suggested that the "actually misleading" standard requires proof that someone was actually misled by the speech.  *Id.* at 112 (Marshall, J., concurring).

[14] Again, even when the evidence is independently viewed in a light most favorable to the Board, there is no evidence in the record, including the affidavits of Josh Henderson, the decisions of the other state agencies, the news articles and website captures, and the survey, to support a holding of actual deception.

No. 18-60144

extensive than is necessary to serve [the Board's] interest'" (quoting *Am. Acad.*, 860 F.3d at 306).    Express instead asserts that "a simple point-of-sale dis-claimer that 'Tire Engineers does not employ professionally-licensed engineers or provide engineering services'" (similar to that required by the state board in Texas) would be "sufficient to serve the Board's interest without suppressing Tire Engineers' speech."

Conversely, the Board avers that "[t]he district court correctly found the name Tire Engineers to be potentially misleading and the State's restriction to be constitutional . . . ."    The Board objects to Express's claim that the name Tire Engineers is not potentially misleading, pointing to evidence in the record—including the telephonic survey and the extensive "use of the phrase 'tire engineer' to refer to actual engineers"—that seemingly indicates otherwise.

"Under *Central Hudson*, a restriction on commercial speech survives First Amendment scrutiny if: (1) 'the asserted governmental interest is sub-stantial,' (2) the regulation 'directly advances' that interest, and (3) the regu-lation 'is not more extensive than is necessary to serve that interest.'"    *Pub. Citizen*, 632 F.3d at 219 (quoting *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002)).    "Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional."    *Thompson*, 535 U.S. at 367.

As a threshold matter, the evidence in the record, particularly the tele-phonic survey, is more than sufficient to support a determination that the Tire Engineers trademark is potentially misleading.    Turning, then, to the first inquiry, the district court correctly held that the Board has a substantial interest in "ensuring the accuracy of commercial information in the market-place" (quoting *Pub. Citizen*, 632 F.3d at 220).    The court also determined that

the Board has a substantial interest in "'maintaining standards of ethical conduct in the licensed professions' and in the trust placed in those standards by the public" (quoting *Pub. Citizen*, 632 F.3d at 220).

Express does not appear to take issue with those conclusions. Accordingly, the evidence in the record establishes that the asserted interests of the Board are substantial.

The district court noted that to satisfy the "directly advances" inquiry, the Board was required to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree" (quoting *Pub. Citizen*, 632 F.3d at 221). In determining that the restriction did directly advance the substantial interests of the Board, the court pointed to evidence from the public opinion survey showing that Mississippians are misled concerning whether Tire Engineers "(1) uses actual tire engineers to perform its services, (2) is offering engineering services, and/or (3) performs its work with the level of skill and training of an actual engineer." The court concluded that "[p]rohibiting [Express] from advertising itself as 'Tire Engineers' would alleviate each of these three separate harms to a material degree." Because Express does not dispute the court's determination on this point, the evidence supports a holding that the ban directly advances the Board's asserted interest.

The final inquiry is whether the regulation is "'more extensive than is necessary to serve'" the identified interest. *Pub. Citizen*, 632 F.3d at 219 (quoting *Thompson*, 535 U.S. at 367). "'[T]he free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing . . . the harmless from the harmful . . . .'" *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (quoting *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 478 (1988)). The means employed by the government actor need not be the "least restrictive means," but it must be "narrowly tailored to achieve

the desired objective." *Id.*

In *Byrum*, 566 F.3d at 449, concerning the terms "interior design" and "interior designer," we held that "the State could have eliminated any constitutional challenge here by not limiting use of the terms 'interior design' and 'interior designer' but by allowing only designers who satisfy its licensing qualifications to represent themselves as 'licensed' interior designers." *See also Am. Acad.*, 860 F.3d at 311–12. Further, this court and others have identified "[s]ufficient disclaimers [as] a means to address consumer deception."[15] This remedy seemingly derives from *Peel*, *Bates*, and earlier Supreme Court cases that "described various regulatory safeguards which the state may impose in place of [a] total ban on commercial speech." *Abramson*, 949 F.2d at 1577.

The record does not support the need for a total ban on the use of Tire Engineers. Evidence offered by both parties, particularly when viewed in the light most favorable to Express as the non-moving party, demonstrates that other states with similar statutes have not challenged the use of the trademark.[16] Thus, despite claims to the contrary, the Board is an outlier in this respect, and it fails to address why alternative, less-restrictive means, such as a disclaimer, would not accomplish its stated goal of protecting the public. The Board thereby fails to satisfy the required burden of demonstrating a reasonable fit between its regulation and the constitutionally-protected speech.

Accordingly, the district court erred in ruling for the Board.[17] The

---

[15] *Am. Acad.*, 860 F.3d at 311; *Abramson v. Gonzalez*, 949 F.2d 1567, 1575–78 (11th Cir. 1992) (finding unconstitutional a Florida law regulating the use of the term "psychologist"); *see also Peel*, 496 U.S. at 110; *Bates v. State Bar of Ariz.*, 433 U.S. 350, 384 (1977).

[16] These states include Alabama, Georgia, Florida, North Carolina, South Carolina, Tennessee, and Virginia. Texas permitted Express to use the Tire Engineers name and mark provided it "affix[es] a physical disclaimer on each Texas location indicating it neither offers nor provides engineering services in the state of Texas."

[17] Moreover, an independent review of the record—this time considering the evidence

summary judgment is REVERSED, and judgment is RENDERED for Express.[18]

---

in a light most favorable to the Board—still yields the conclusion that the means employed were more restrictive than necessary to achieve the Board's desired ends.  We are not, however, "suggest[ing] that the Board may not impose appropriate restrictions in [this] area." *Am. Acad.*, 860 F.3d at 312.  "A regulation that fails *Central Hudson* because of a lack of sufficient evidence may be enacted validly in the future on a record containing more or different evidence." *Pub. Citizen*, 632 F.3d at 221.

[18] We do not reach the issue of whether *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), altered the commercial speech analysis because the Board's ban fails to meet the traditional scrutiny test outlined in *Central Hudson.*